IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DOUG SAGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 13-4039-KHV |
| BIRD CITY DAIRY, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

Doug Sage brings suit against Bird City Dairy, LLC, alleging negligence and violation of K.S.A. §§ 47-122 and 47-123. Plaintiff alleges that through defendant's negligence and failure to maintain its premises in a reasonably safe manner, defendant allowed its cows to escape their enclosure. See Pretrial Order (Doc. #62); Complaint (Doc. #1) filed November 13, 2012. This matter comes before the Court on Defendant Bird City Dairy, LLC's Motion For Summary Judgment (Doc. #65) filed September 26, 2014. For the reasons set forth below, the Court finds that defendant's motion for summary judgment should be overruled.

**I.   Legal Standard**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A

"genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to dispositive matters for which he carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). To carry his burden, the nonmoving party may not rest on his pleadings but must instead set forth specific facts supported by competent evidence. Nahno-Lopez, 625 F.3d at 1283.

The Court views the record in the light most favorable to the nonmoving party. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). It may grant summary judgment if the nonmoving party's evidence is merely colorable or is not significantly probative. Liberty Lobby, 477 U.S. at 250-51. In response to a motion for summary judgment, a party cannot rely on ignorance of facts, speculation or suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988); Olympic Club v. Those Interested Underwriters at Lloyd's London, 991 F.2d 497, 503 (9th Cir. 1993). The heart of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251-52.

## II. Facts

For purposes of summary judgment, the following facts are either uncontroverted or construed in the light most favorable to plaintiff.

### A. The Parties And The Accident

On December 14, 2010, Doug Sage was driving a semi-truck loaded with cattle on Highway 36 outside of Bird City, Kansas, when he struck a cow on the highway. Bird City Dairy owned that cow, and Sage claims injuries resulting from the accident.

The cow had escaped from a pen on defendant's dairy property. Highway 36 and County Road 32 border two sides of the dairy. On the night of the accident, defendant's property had five pens, a milking parlor and a maternity barn. The dairy housed approximately 2,000 cows. As part of its business operations, defendant arranged with a local hauling company, L&W Hauling Company, to remove cow manure from the property. Three individuals, including two L&W Hauling workers and one of defendant's employees, gave different accounts of the accident.

#### 1. Account Of L&W Hauling Worker, Jacob White

Jacob White, who worked for L&W Hauling, testified that on the day of the accident, his co-worker Jay Keithline was last to leave the pen. White testified that it was dark when Keithline closed the gate. When asked whether he had confirmed that Keithline locked the gate properly, White said, "As far as I could see, yes. It was dark." White Dep. (Doc. #68-2) filed October 17, 2014 at 19:19-21. He testified that after they left the pen, he and Keithline used the front-loader lights to see.

3

### 2. Account Of L&W Hauling Worker, Jay Keithline

Keithline testified that he was not on the property the day of the accident and that he never worked on the dairy property after dark because of "[c]ows getting out, because you can't see where they're at or a gate's not getting latched all the way 'cause people are in a hurry."[1] Keithline Dep. (Doc. #68-1) filed October 17, 2014 at 23:19-21. Keithline testified that one pen was significantly darker than the others.[2] He said that he would have remembered cows escaping, and because he had no personal recollection of the event, he must not have worked that day.

### 3. Account Of Bird City Dairy Employee, Ernesto Salias

Ernesto Salias testified that he and three other dairy employees were working at the time of the accident. Salias was working in the maternity barn and the other three were working in the milking parlor. While Salias moved a bale of straw to the barn, he saw White inside a pen. When he left the maternity barn approximately 35 minutes later, Salias saw that more than 20 cows had escaped that pen through its open gate. Salias recalled that this occurred before dark, around twilight. When Salias saw that the cows had escaped, he also saw plaintiff's semi-truck parked on Highway 36. Salias immediately called the three co-workers to help. They rounded up the cows and placed them back in the pen.

### B. Defendant's Relationship With L&W Hauling And Its Workers

L&W Hauling sold manure which it removed from defendant's property. As compensation for its removal services, it retained the proceeds. Defendant did not directly

---

[1] Keithline first testified that L&W Hauling did not employ him on December 14, 2010. He later corrected his testimony to state that L&W did employ him, but that he did not work on that day.

[2] It is not clear whether the cow in question escaped from this pen.

4

compensate L&W Hauling for removing the manure, and the parties had no written contract regarding their arrangement.  Except for a front-loader, which defendant owned and rented to L&W Hauling, L&W Hauling used its own equipment.  Defendant allowed L&W Hauling to enter its property to remove manure without charging or paying a fee, and permitted L&W Hauling to sell the manure which it removed.

Drivers for L&W Hauling operated semi-trucks and had commercial driver's licenses.  L&W Hauling paid salaries to Keithline and White.  Keithline and White primarily worked on defendant's property and worked approximately 40 hours per week there.  The workers for L&W Hauling coordinated with Mike McCarty, defendant's operating manager, on a daily basis, for issues specific to the dairy.  Keithline testified that McCarty directed them while they were on the dairy property, and Loren White, their supervisor at L&W Hauling, directed them when they were off dairy property.[3]  McCarty was in charge of safety on the dairy.  McCarty directed the L&W Hauling workers to pens that needed cleaning and provided other special instructions.  McCarty also showed workers from L&W Hauling how to shut the gates and run the front-loader.  McCarty told them not to let the cows out, and directed them to corral the cows back in if they escaped.  Defendant also established safety rules that the workers from L&W Hauling had to follow, including wearing safety vests.  When workers from L&W Hauling were not available to clear the pens, defendant's employees scraped manure to the center of the pens or moved it out if the piles became too large.  Defendant, however, never hauled manure off its property.

---

[3] Keithline testified that McCarty was his direct supervisor at the dairy but that McCarty would instruct Loren White, who would instruct the workers.  Keithline Dep. (Doc. #68-1) at 16:1-4 ("Mike McCarty, if I understood the question right.  Because he would tell Loren White where we need to haul out of and then we would get told where to haul out of, if I understood the question right.").  Jacob White testified that he and Keithline "coordinated with Mike McCarty every day."  White Dep. (Doc. #68-2) at 11:3-4.

### C. The Gates And Locks

The gate locks consisted of chains that wrapped around metal tubing fencing. One side of the chain had a loop and the other side had a welded metal bar shaped like a "T". To close the gate, workers were to wrap the chain twice around the gate and fence and pull the T bar through the loop end of the chain.

### D. Previous Escapes

Cows had escaped from the pens on previous occasions, but none had ever escaped to Highway 36, which was 150 to 300 yards away from the pen from which the cows escaped on December 14. Keithline said that he had never seen a cow more than ten feet from the pens. White said that before the accident, he had seen an escaped cow near County Road 32. When the cows escaped, defendant's employees would corral them back into their pens. On prior occasions, cows had opened gates on their own by licking the locks until they opened.

## III. Analysis

Plaintiff asserts that defendant negligently failed to maintain its premises in a reasonably safe manner in violation of K.S.A. §§ 47-122 and 47-123. Pretrial Order (Doc. #62) at 4 ¶ 4.a. Under K.S.A. § 47-122, it is unlawful for any livestock to run at large. Under K.S.A. § 47-123, any owner whose livestock runs at large in violation of Section 47-122 is liable for all damages resulting therefrom, and any person so injured shall have a lien on the livestock for the amount of such damages.

The pretrial order asserts that because of defendant's negligence on December 14, 2010, cows escaped from unsecured property and caused injury to plaintiff. Pretrial Order (Doc. #62) at 4 ¶ 4.a. Plaintiff asserts that defendant was negligent when it (1) failed to use self-closing gates and ensure that its agents, statutory employees or invitees properly closed or secured the

gates; (2) failed to properly train its employees, agents, statutory employees or invitees to properly close and lock the gates; and (3) failed to provide adequate lighting for those shutting or locking the gates to ensure and see whether they had been properly closed and secured. Pretrial Order (Doc. #62) at 4 ¶ 4.a.

Defendant alleges that its employees and agents did not fail to properly lock the gate and that it is not vicariously liable for the negligence of others. Id. at 4 ¶ 4.b.1. Defendant denies that it was negligent for failing to use reasonable care to prevent cows from escaping "as it never had a cow previously escape its premises and it was not the responsible party that failed to properly lock the gate." Id. at 4-5 ¶ 4.b.2-3. As an "affirmative defense," defendant alleges that plaintiff "has no evidence as to how the cow escaped or any evidence of willful conduct or negligence on the part of Defendant." Id. at 5 ¶ 4.b.6. As another "affirmative defense," defendant states that L&W Hauling is the responsible party, as its employee failed to properly lock the gate, and that employees of L&W Hauling were not defendant's employees, agents, statutory employees or invitees, so defendant is not vicariously liable for their acts. Id. at 5 ¶ 4.b.4. Defendant also states that the failure of L&W Hauling to adequately lock the gate insulates defendant from liability under K.S.A. §§ 47-122 and 47-123, and that the fault of L&W Hauling should be compared to any fault of its own. Pretrial Order (Doc. #62) at 5 ¶ 4.b.5, 8.

Defendant asserts that it is entitled to summary judgment because (1) plaintiff has no evidence of how the gate opened or any failure of defendant to take reasonable precautions and (2) if a third party left the gate open, defendant is not responsible. Plaintiff responds that (1) the record contains evidence of how the gate opened, from which a reasonable jury could conclude

7

that defendant failed to take reasonable precautions and (2) a reasonable jury could find that negligent workers for L&W Hauling were agents or employees of defendant.[4]

### A. Evidence Of How The Gate Opened And Whether Defendant Took Reasonable Precautions

Defendant asserts that plaintiff cannot show that defendant violated K.S.A. §§ 47-122 and 47-123 because he has no evidence of how the gate opened and his allegations are based on unsupported theories. Memorandum In Support Of Defendant Bird City Dairy, LLC's Motion For Summary Judgment ("Defendant's Memorandum") (Doc. #66) filed September 26, 2014 at 8-9. Defendant also asserts that plaintiff has no evidence that defendant failed to take reasonable precautions. Id. at 5-8. Plaintiff responds that the record reveals genuine issues of material fact whether defendant failed to adequately light its pens or use appropriate locks − especially since cows had escaped in the past. Plaintiff's Response (Doc. #68) at 6. For reasons stated below, plaintiff has raised a genuine issue of material fact whether defendant exercised reasonable precautions to ensure that its cows did not run at large in violation of K.S.A. §§ 47-122 and 47-123.

---

[4] In the alternative, plaintiff argues that even if employees of L&W Hauling were independent contractors, securing the gate was defendant's non-delegable duty. See Plaintiff's Response (Doc. #68) at 10-11. The Restatement (Second) of Torts § 411 (1965), which plaintiff cites, creates a cause of action for negligently selecting an independent contractor. The pretrial order, however, does not assert that defendant negligently selected L&W Hauling. Therefore, Section 411 is inapplicable. Likewise, plaintiff's cited cases are inapplicable. See Plaintiff's Response (Doc. #68) at 10-12; Hauptman v. WMC, Inc., 43 Kan. App.2d 276, 284-91, 224 P.3d 1175, 1182-86 (2010) (affirming dismissal of negligent hiring claim by employees of independent contractor against company which hired independent contractor); Dillard v. Strecker, 255 Kan. 704, 726, 877 P.2d 371, 385 (1994) (landowner not liable to employee of independent contractor for injuries sustained by breach of nondelegable duty imposed on landowner); McDonnell v. Music Stand, Inc., 20 Kan. App.2d 287, 294, 886 P.2d 895, 901 (1994) (negligent hiring claim properly dismissed).

Negligence is "the lack of ordinary care or more specifically, the failure of a person to do something that a reasonably careful person would do, or the act of a person in doing something that a reasonably careful person would not do, measured by all the circumstances then existing." Elstun v. Spangles, Inc., 289 Kan. 754, 756, 217 P.3d 450, 453 (2009) (quotation and citation omitted). To recover, plaintiff must show (1) a duty or standard of care; and that (2) defendant breached the duty or standard of care, (3) plaintiff was injured and (4) defendant's breach proximately caused plaintiff's injury. Thomas v. Cnty. Comm'rs of Shawnee Cnty., 293 Kan. 208, 220-21, 262 P.3d 336, 346 (Kan. 2011). An owner who allows its livestock to run at large in violation of K.S.A. § 47-122 is liable for damages that proximately result. K.S.A. § 47-123; Wilson ex rel. Rice v. McDaniel, 327 P.3d 1052, No. 109,898, 2014 WL 3019946, at *8 (Kan. Ct. App. June 27, 2014). Livestock owners must use due care and take reasonable precautions to restrain their animals. Cooper v. Eberly, 211 Kan. 657, 668-69, 508 P.2d 943, 952 (1973); Coffey v. Wheeler, No. 104,953, 2011 WL 3658432, at *2 (Kan. Ct. App. Aug. 19, 2011). Plaintiff cannot use res ipsa loquitur to recover under K.S.A. §§ 47-122 and 123. Abbott v Howard, 169 Kan. 305, 307, 219 P.2d 696, 698 (1950). The statute does not require absolute security, however, and farmers are not liable simply because an animal escapes; plaintiff must show evidence of defendant's willful or negligent conduct. Clark v. Carson, 188 Kan. 261, 265, 362 P.2d 71, 74 (1961).

To make a prima facie case under K.S.A. § 47-122, plaintiff must provide evidence that the animal with which he collided was unattended because "its owner had failed to exercise due care in enclosing it, under all the surrounding facts and circumstances." Abbott, 169 Kan. at 315, 219 P.2d at 703. In other words, the fact that defendant's cow was unattended on the highway does not prove that defendant failed to use reasonable measures to contain it. See id. at

307, 219 P.2d at 698. Plaintiff must show that defendant failed to take reasonable precautions to prevent its cow from running at large, and that the failure of defendant or its agents to take reasonable precautions caused the cow to run at large. See id. To make such a showing necessarily requires some evidence of how the animal escaped or became unconfined in the first place. See id. Construing the facts in the light most favorable to plaintiff, the record reveals a genuine issue of material fact whether a worker of L&W Hauling failed to properly shut the gate or a cow opened the gate itself and escaped.[5]

The record contains evidence that a worker for L&W Hauling – either Keithline or White – was last to leave the pen. Plaintiff's Response To Defendant's Motion For Summary Judgment ("Plaintiff's Response") (Doc. #68) filed October 17, 2014 at 7. Plaintiff has raised a

---

[5] Defendant appears to suggest that plaintiff's reliance on circumstantial evidence amounts to seeking a determination through res ipsa loquitur. Defendant's cases, however, do not require that plaintiff provide direct evidence of negligence or causation. See Restatement (Second) of Torts § 328D cmt. b ("Negligence and causation, like other facts, may of course be proved by circumstantial evidence. . . . A res ipsa loquitur case is ordinarily merely one kind of case of circumstantial evidence, in which the jury may reasonably infer both negligence and causation from the mere occurrence of the event and the defendant's relation to it."). Here, plaintiff does not assert that because defendant's cow was in the highway, defendant was negligent. Rather, plaintiff supports each theory with circumstantial evidence of causation: (1) the workers for L&W Hauling were in the cow pen minutes before the cows escaped; (2) it was dark and difficult to see whether the gate was locked; and (3) defendant's cows knew how to escape and had done so on other occasions. Circumstantial evidence can properly support a finding of causation.

> In order for circumstantial evidence to be sufficient to sustain a finding in a civil case, such evidence need not rise to that degree of certainty which will exclude any and every other reasonably conclusion. It suffices that such evidence affords a basis for a reasonable inference by the court or jury of the occurrence of the fact in issue, although some other inference equally reasonable might be drawn therefrom.

Kuxhausen v. Tillman Partners, L.P., 291 Kan. 314, 320, 241 P.3d 75, 80-81 (2010) (quoting Am. Family Mut. Ins. Co. v. Grim, 201 Kan. 340, 340 ¶ 1, 440 P.2d 621, 621 ¶ 1(1968)).

genuine issue of material fact whether one of them failed to properly lock the gate. Plaintiff also presents evidence that the pen was not well lit, that workers for L&W Hauling could not see whether the gate was properly locked and that failure to properly lock the gate foreseeably allowed the cows to escape.[6] This evidence raises a genuine issue of material fact with regard to defendant's negligence.

Defendant argues that because White, Keithline and Salias gave conflicting testimony about who left the pen last, plaintiff's evidence is "too speculative for a jury to conclude that this theory is probable." Defendant's Memorandum (Doc. #66) at 8. As fact finders, however, the jury will assess the credibility of the witnesses and determine the weight to be given to their testimony.[7] See Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp., 571 F.2d 1144, 1149 (10th Cir. 1978) (jurors charged with exclusive duty to assess credibility of witnesses).

Plaintiff also raises genuine issues of material fact whether a cow opened the gate. Defendant's cows had previously opened the gates, and a jury could infer that they did so on the night of the accident. Defendant knew that cows had escaped in the past. A reasonable jury

---

[6] Defendant suggests that it did not have notice that cows could escape to the highway because when cows escaped on other occasions, "Bird City Dairy employees were always nearby and were corralling the cows back into the pens." That cows had not escaped to Highway 36 seems more a function of luck, however, than foreseeability. A reasonable jury could conclude that cows could easily walk 150 to 300 yards to the highway, and that defendant could foresee that range of movement unless the cows were under constant surveillance.

[7] Defendant would be entitled to summary judgment if the record contained *no* evidence how the animals escaped and no evidence that they escaped because defendant had failed to exercise due care. See Abbott, 169 Kan. at 312, 219 P.2d at 701; Wilson v. Rule, 169 Kan. 296, 300, 219 P.2d 690, 693 (1950). The record here is not devoid of such evidence. Therefore, summary judgment is improper. See Coffey v. Wheeler, 257 P.3d 882, No. 104,953, 2011 WL 3658432, at **2-3 (Kan. Ct. App. Aug. 19, 2011) (reversing summary judgment for defendant when evidence supported inference that fence was insufficient to enclose steer which broke a rusty wire by rubbing its head on fence).

could find that defendant did not exercise due care when it failed to replace the gate chains with cow-proof locks and that defendant could reasonably foresee that cows who escaped could end up on Highway 36.[8]

Defendant suggests that because plaintiff offers alternative theories of how the cows escaped, all theories are unsupported speculation. Defendant Bird City Dairy, LLC's Reply Suggestions In Support Of Its Motion For Summary Judgment (Doc. #69) at 5. The Court disagrees. Circumstantial evidence supports each of plaintiff's alternative theories.

### B.   Defendant's Liability For Acts Of Keithline And White

Defendant argues that even if an employee of L&W Hauling left the gate open, plaintiff has no evidence that that employee was an employee, agent or statutory employee of Bird City Dairy, and that it is therefore entitled to judgment as a matter of law. Defendant's Memorandum (Doc. #66) at 9. Plaintiff argues that the workers of L&W Hauling were agents of Bird City Dairy, which is liable for their negligence.[9] Plaintiff's Response (Doc. #68) at 9-10.

---

[8]    Defendant argues that plaintiff lacks sufficient evidence because no experts have opined that the gate locking system was defective or insufficient. Defendant's Memorandum (Doc. #66) at 7. As noted, however, plaintiff produced evidence that cows had opened the locks in the past. Jurors would not need an expert to opine whether defendant's gate locking system was effective in containing cows.

[9]    Plaintiff also asserts that because the workers of L&W Hauling could be statutory employees of defendant under the Kansas Workers Compensation Act, defendant is vicariously liable for their acts. See Pretrial Order (Doc. #62) at 4 ¶ 4.a. (alleging that defendant failed to have procedures to ensure "statutory employees" properly closed or secured gates, and defendant failed to properly train statutory employees); Plaintiff's Response (Doc. #68) at 9 ("[T]he princip[le] of statutory employees under Kansas law supports imputing vicarious liability on Defendant for L&W workers [sic] negligent actions."). Plaintiff states that K.S.A. §44-503(e) "extends the application of the Workers Compensation Act to certain individuals or entities who are not the immediate employers of the injured worker." Plaintiff's Response (Doc. #68) at 9. Plaintiff argues that "[w]hile normally used in the context of workers compensation cases, the public policy behind the creation of statutory employees applies similarly to the harms workers suffer and the harms they cause." Id. Plaintiff offers no support for the assertion that the
(continued…)

The record supports an inference that, while on its property to perform manure removal services, employees of L&W Hauling were defendant's agents. McCarty, defendant's operating manager, directed and supervised them on a daily basis on the dairy property. McCarty directed what pens should be cleaned and when Keithline and White should clean them. Keithline and White worked 40 hours a week on defendant's property, and defendant required them to follow certain safety rules.[10] Construing the facts in the light most favorable to plaintiff, a reasonable jury could find that Keithline and White were defendant's agents on the day of the accident, and that defendant is vicariously liable for their negligence. See Bright v. Cargill, Inc., 251 Kan. 387, 404-05, 837 P.2d 348, 362-63 (1992). Defendant is not entitled to summary judgment on that issue.

---

( . . . continued)
Worker's Compensation Act is relevant here. Plaintiff does not assert that *he* was defendant's statutory employee, and employees of L&W Hauling are not seeking damages; therefore the statute is inapplicable.

[10]    Plaintiff does not clarify which theory of agency specifically applies here, but generically states that an agency relationship exists. The Court's research includes the "borrowed servant" doctrine, an agency relationship that exists when a person is the servant of two masters. Under this theory, an employer who temporarily "borrows" an employee may become liable for that employee's negligence. See Bright v. Cargill, Inc., 251 Kan. 387, 404, 837 P.2d 348, 362 (1992). "A servant is an agent employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master. Restatement (Second) of Agency § 2 (1958). Under Restatement (Second) of Agency § 226, a "person may be the servant of two masters, not joint employers, at one time as to one act, if the service to one does not involve abandonment of the service to the other." When reasonable minds could differ, "the determination of whether 'loaned' employees become the employees of the borrower" is a question of fact. Bright, 251 Kan. at 406, 837 P.2d at 363; see also id. at 405; 837 P.2d at 362 (quoting Baker v. Magnolia Pet. Co., 111 Kan. 555, 560, 207 P. 789, 792 (1922) ("It is well settled that the servant of A may for a particular purpose, or on a particular occasion, be the servant of B, though he continues to be the general servant of A and is paid by him for his work."). Courts look to the following factors in determining whether a worker is a borrowed servant: (1) whose work the worker benefitted; (2) who could discharge the worker; and (3) who had the right to supervise and control the worker and determine how the work should be done. Id. at 405; 837 P.2d at 362.

**IT IS THEREFORE ORDERED THAT** <u>Defendant Bird City Dairy, LLC's Motion For Summary Judgment</u> (Doc. #65) filed September 26, 2014 be and hereby is **OVERRULED**.

Dated this 28th day of April, 2015, at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge
